The Honorable Mark McAlpine again on the cost appeal. This is not an issue that we think is deserving of the court's attention. We're very confident we're going to win on the merits appeal and that this would be superfluous. We think we've addressed the issue squarely in the brief. Clearly our position is that the trial court went well beyond what was expected in terms of awarding costs, by the case law that we've cited. And with that, I'd like to reserve the remaining time to respond if I need to. I'm sorry, Your Honor. Your Honor, I'm sure that was done in the briefing that was submitted. I know it was certainly addressed in our reply brief, but I'm quite certain it was addressed. I think that whole category was addressed in terms of the for convenience and not necessity, and this notion that there really are professional services that are involved in preparing those kinds of exhibits and presentations that traditionally have been disallowed. I believe you will. Yes. Your Honor, as I stand right here, I don't have that number in front of me. I'm sure CTAS will be happy to supply it. I know it was a large number. We would eliminate that category entirely, Your Honor. Well, for the total award, well, I think we presented that in our briefs to the court clerk and the district court. We put the number in there, and it's part of this record. Thank you. May it please the court, Robert Yablon for appellee CTAS. The district court in this case issued a cost award that reflects a sound exercise of the court's broad discretion, and it represents just a small fraction of the tremendous cost that CTAS had to incur to defend itself over the 16-year history of this case. At this stage, the party's dispute about cost is actually relatively narrow. Colitta appears to accept that CTAS was indeed the prevailing party. It is presumptively entitled to its costs and should have gotten some cost award. In the district court, it identified a handful of line items that it said were inappropriate, but even Colitta acknowledged that at a bare minimum, CTAS ought to be entitled to approximately $435,000 of the $622,000 that the district court awarded. So we're dealing with a subset of the cost award at this point. Thank you. Well, if you don't mind, let me address Taniguchi a bit more broadly, and then I'll get to the Pro Hoc Vicee fees. Taniguchi, as you know, was specifically about Section 1926. It was about the definition of interpreter, so it didn't specifically address the definition of exemplification and what fees for exemplification ought to be compensated. So as an initial matter, even if there might be some tension between Taniguchi and this Court's cases, it hasn't gone to the point of a clear inconsistency and would require this Court to stick with its previous So my second point is that, in fact, I think that there is not significant tension between this Court's existing precedent and Taniguchi. So even if tension were enough for this Court to step back from its existing precedent, it's just not really here. What the Court did in Taniguchi was to say, well, we're not going to do that.   We're not going to do that. What the Court did in Taniguchi was it rejected a broad definition of the word interpreter and in favor of the ordinary definition of interpreter. Right. So it shows the common and ordinary meaning. And what the Court said in Taniguchi was, we see no compelling reason to stretch the ordinary meaning of the term. And in this case, when we're dealing with the term exemplification, the common ordinary  term, which this Court has recognized in decisions like Maxwell, an exemplification is an act of illustration by example. And so in Maxwell, this Court said that that means that exemplifications include demonstrative aids of all forms. That's been the law, the settled law, of this Circuit for 25 years. That's the ordinary meaning of exemplification, just as the ordinary, the most common meaning of interpreter is someone who interprets orally rather than translates documents in writing. So by — when you look at the definition, specifically, ordinary meaning in both is consistent. Now, Taniguchi also — What? And so when it comes to an interpreter, the first definition that you would typically see in a dictionary is that it is someone who translates orally. When you look at a dictionary, the first definition that you would typically see for exemplification is the one in general usage, that it is an act of illustration by example. And then you might see — Right. And when you look at a definition of interpreter, it might say further down, occasionally used to include written translation. So, again, the Court went with what it considered. It didn't say we need to read it narrowly. It said we need to give it its ordinary and common meaning, and we don't want to stretch the meaning. That was the Court's words. Now, the Court also did talk about costs being modest in the overall context of the prevailing parties' expenditures. And I know that Kalita has suggested that $600,000 simply is beyond the bounds of modesty. But — Sure. So with the Pro Hoc Vitae fees specifically, that is under Section 1921, and that refers to fees of the clerk. Pro Hoc Vitae fees, as we lay out on our brief, are specifically stated on the website of the Northern District of California on the clerk's page as a fee of the clerk. Okay. So — Well, one response is that the judicial conference actually does say in their list of expenses original admission of attorneys to practice. And so — well, I guess they could construe it that way because it is an original admission of an attorney who is not usually practicing before the bar of the court to participate before the court in a case. And my understanding is that Pro Hoc Vitae fees are common, so courts are finding the authority somewhere. I doubt that — I suspect if they feel that they are bound specifically to the limits of the judicial conference list, that they're using the language that I just cited from the judicial conference and taking that to include Pro Hoc Vitae fees as an original admission of an attorney from outside to practice in that court. And so it is on the Northern District's website a fee of the clerk. You pay it to the clerk. So if you think that — I guess — I'm inferring that that may be — I mean, I have not seen — Well, I believe — I mean, typically it is — it's not something that I've looked into that deeply. I mean, as you know, this is not something — the Pro Hoc Vitae fees, there was not  I think that that's a fair characterization. Now, I would say that 1920 itself — 1920 itself does not have a reference to either 1914 or to the judicial conference. So I think actually, even if you had some doubts about whether it was appropriate for district courts, as they commonly do, to charge Pro Hoc Vitae fees, when you're dealing with 1921, you kind of have to take the fees as you find them. And the Northern District does charge these fees. They've long been considered fees of the clerk. And so for purposes of 1921, what the prevailing party is entitled to recoup are fees of the clerk. And so, you know, there never has been any argument below in this case about Section 1914 or the judicial conference. I mean, it's just never been raised before — you know, what are reasonable questions asked today, but it's just never been a part of this case. And these have always been considered fees of the court — of the Northern District. So the common definition of exemplification, an act of illustration, by example. There are two potential bases for the video clips to come in. One is exemplification under 1920, subsection 4. The other is Section 1920, subsection 2, which allows for fees for electronically recorded transcripts. And so that would seem to potentially encompass a video tape deposition. There are some courts that have held that. But that would be not the common usage? Or would you say that's the common usage? I mean, we're — if we're talking about exemplification and we're using the definition you prefer, a showing or illustrating by example, are you agreeing it's not an example, it's not a showing or illustration by example, and that it should come in as something else, as an electronic transcript? I think it could legitimately come in under either. I think that it is an illustration of the testimony that a witness who is not able to appear for trial is giving. And there are a number of cases, which we cite in our brief, that have done just that. I don't believe, again, that this is an argument that was raised by Kalitta below. I think that their only objection with respect to the videotaped depositions was not whether or not it fell within the scope of the statute, but simply whether it was reasonable — reasonably necessary. And they cite a handful of cases in which district courts found as a discretionary matter that the cost should not be awarded because in the context of those cases, it was what the Court considered a mere convenience. Most of those cases involved a situation different from the one here, in which the party was seeking to use the videotape not as substantive evidence to bring in the testimony of a witness who could not attend trial, but instead wanted to use the videotape to impeach a witness who was on the stand and they hoped to kind of get a gotcha moment by doing that. And the Court said, well, that's not reasonably necessary. In this case, the district court judge who was there at the trial understood that we were dealing with difficult engineering and financial concepts, understood that it would be difficult for a jury to understand this testimony if it was just being read from the cold transcript into the record, decided that it was, in fact, reasonably necessary to hear from the actual witnesses to be able to judge their credibility. And so this is something that both sides did. Both sides offered video testimony of witnesses who were not appearing in person. So, again, there was no statutory interpretation issue raised below with respect to these costs. And very clearly, their recoverability falls well within the district court's discretion. The district court was there and saw that these were reasonably necessary expenses in the context of this particular case. Well, I'd be happy to, Judge Black, if you wanted me to discuss the graphics costs a little bit more, I'd be happy to do that. But if there are no further questions, I'd urge the Court to reform. Thank you. Your Honor, Claude will rest on his brace. All right. This case stands. This case is submitted and the Court for this session stands adjourned. Thank you. Thank you.
judges: Black, Farris, Ikuta